IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,268

STATE OF KANSAS,
*Appellant*,

v.

DEXTER BETTS,
*Appellee.*

SYLLABUS BY THE COURT

K.S.A. 2021 Supp. 21-5231(a) permits a criminal defendant in certain cases to claim self-defense immunity from prosecution for the justified use of deadly force. This statutory immunity is confined to circumstances when the use of such force is against a person or thing reasonably believed to be an aggressor. The statute does not extend immunity for reckless acts resulting in unintended injury to innocent bystanders while the defendant engaged in self-defense with a perceived aggressor.

Review of the judgment of the Court of Appeals in 60 Kan. App. 2d 269, 489 P.3d 866 (2021). Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed July 29, 2022. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellant.

*Jess W. Hoeme*, of Joseph, Hollander & Craft LLC, of Wichita, argued the cause, and *Carrie E. Parker*, of the same firm, of Topeka, was with him on the briefs for appellee.

The opinion of the court was delivered by

1

BILES, J.: While securing the interior of a family home during a domestic violence investigation, Wichita Police Officer Dexter Betts fired two gunshots in quick succession at a fast-approaching dog he thought was attacking him. He missed, and bullet fragments struck a young girl sitting nearby. The State charged the officer with reckless aggravated battery for injuring her. Betts moved to dismiss the charge before trial. He argued state law immunizes his use of deadly force in self-defense—even if he acted recklessly and regardless of who got hurt. The district court agreed and dismissed the case. When the State appealed, a Court of Appeals panel affirmed. *State v. Betts*, 60 Kan. App. 2d 269, 489 P.3d 866 (2021). On review, we reverse the grant of statutory immunity and remand the case to the district court for further proceedings.

This appeal presents facts we have not considered before. In the typical self-defense immunity case, the State charges a defendant with an intentional crime committed against a person claimed to be the aggressor. And when the defendant invokes statutory immunity from prosecution in a case involving the use of deadly force against the alleged aggressor, we determine whether the defendant had a reasonable belief such force was necessary to prevent imminent death or great bodily harm to the defendant or a third person. See, e.g., *State v. Collins*, 311 Kan. 418, 461 P.3d 828 (2020) (two-prong test applies).

But what about a circumstance like this when the crime charged involves an innocent bystander who was unintentionally injured during the defendant's allegedly reckless conduct while engaging in self-defense? To answer that, we begin with the statute. *State v. Hardy*, 305 Kan. 1001, 1008, 390 P.3d 30 (2017) ("As with any problem of statutory interpretation, we turn first to the plain language of the statute itself."). K.S.A. 2021 Supp. 21-5231(a)'s text explicitly ties its privilege to yet another statute, K.S.A. 2021 Supp. 21-5222, which provides only that a person is "justified in the use of

force *against another . . . to defend . . . against such other's imminent use of unlawful force.*" (Emphasis added.) So on its face, the statutory grant of immunity is confined to the use of force against a person or thing reasonably believed to be an aggressor.

We hold K.S.A. 2021 Supp. 21-5231(a) does not extend its immunity to a defendant's reckless acts while engaged in self-defense that result in unintended injury to an innocent bystander as alleged here.

FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the district court's factual findings, so we quote from its written order:

"On December 30, 2017, defendant Betts, Officer [Andrew] Corliss & other Wichita Police Department (WPD) officers were dispatched to a residence on a report of domestic violence. . . . Information provided to law enforcement included that the man had a gun; the man had threatened suicide; the man had put the gun in his mouth; the man had choked a dog. The officers were notified that the actions of the man were committed in front of children. Officers were informed that the children were in the house screaming. WPD officers were responding to a volatile and potentially dangerous situation.

"Officers Betts and Corliss contacted a male outside the home upon arrival. The man was unarmed. The officers saw children standing inside the front door of the residence. WPD Sgt. Crouch arrived and instructed officers Betts and Corliss to enter the residence to check the safety of the occupants. As officers Betts and Corliss approached the door or shortly after their entry into the residence, Sgt. Crouch informed the officers that the gun was inside the residence under a pillow in a bedroom.

"When the officers entered the residence, two . . . boys were in front of the television in the living room of the small home. A girl was on the floor in front of a sectional couch. . . . Officer Corliss entered the home and went to his left into the master

3

bedroom and located a gun under a pillow. *Officer Betts acknowledged the children and entered a hallway. Officer Betts, consistent with WPD department policy and/or procedures, had his weapon drawn.* A flashlight was affixed to Officer Betts's firearm and provided illumination. *Officer Betts noticed what he believed to be a pit bull in one of the rooms off of the hallway.*

"Officer Corliss yelled out that he found a gun. *Officer Betts acknowledged Corliss and said 'we have a dog in here.' Officer Betts returned to the living room. The dog that Officer Betts had noticed had advanced down the hallway and was approaching Officer Betts. Officer Betts said 'whoa, whoa' and fired twice at the advancing dog. The girl mentioned earlier can be seen on the floor in front of the couch near the advancing dog. The dog was barking as it approached the officer and appears to be lunging toward Officer Betts when the shots are fired. The shots missed the dog and struck the floor. Bullet fragments struck the girl above the eye and on a toe.*

"Officer Betts's AXON camera recorded the incident. According to the AXON video, all of the above transpired within approximately thirty . . . seconds of the officers' entry into the home." (Emphases added.)

The State charged Betts with reckless aggravated battery under K.S.A. 2017 Supp. 21-5413(b)(2)(B) ("Aggravated battery is . . . recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."). K.S.A. 2021 Supp. 21-5202(j) explains that "[a] person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

The State's case alleges Betts consciously disregarded a substantial and unjustifiable risk of injury by firing his handgun twice at the dog while the girl sat nearby

4

on the living room floor. At the preliminary hearing, the district court found probable cause to believe the charged crime had occurred and probable cause to believe Betts committed it. In its ruling, the court noted, "the child that was ultimately injured . . . is right next to the dog." See *State v. Washington*, 293 Kan. 732, 733-34, 268 P.3d 475 (2012) (noting probable cause to bind a defendant over for trial "'signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt'").

Betts filed a pretrial motion to dismiss seeking self-defense immunity under K.S.A. 2021 Supp. 21-5231(a). It provides:

> "A person who uses force which . . . is justified pursuant to K.S.A. 21-5222 . . . is immune from criminal prosecution and civil action for the use of such force . . . . As used in this subsection, 'criminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant."

K.S.A. 2021 Supp. 21-5222, which K.S.A. 2021 Supp. 21-5231 references, adds detail:

> "(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

> "(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person."

5

In his motion, Betts argued that so long as his use of deadly force against the dog was justified under this statutory scheme, any unintended harm to an innocent bystander should not change his entitlement to immunity. The State responded with three arguments: (1) self-defense immunity is never available to those who act recklessly; (2) a reasonable person in Betts' circumstances would not believe firing a handgun in the living room was justified because he saw the children and knew a dog was on the premises before he arrived; and (3) self-defense immunity is reserved for deadly force applied against a person, but not an animal.

Three witnesses testified for the State at an evidentiary hearing on the motion to dismiss. Officer Corliss described the incident, while Officer Hannah Holley, a crime scene investigator, explained how the bullets fragmented when they struck the floor and hit the girl. Wichita Police Lieutenant Christopher Halloran, a former range master in charge of the department's firearms training, described the policy on use of deadly force in self-defense against animals. He explained the policy allows WPD officers to use firearms to defend themselves against a charging or dangerous animal. He said: "[T]he fact that Officer Betts used his weapon to defend himself against a dog is not uncommon." He added: WPD "does shoot dogs pretty regularly." He presented a video simulator used to train recruits that includes scenarios with dog attacks. The defense introduced evidence summarizing 21 incidents of officers shooting at dogs between 2014 and 2018.

In ruling, the district court limited itself to the State's arguments, rejecting each. First, the court decided a defendant can assert self-defense immunity when charged with a recklessness crime. It relied on *Hardy*, 305 Kan. at 1010, which characterized the statutory scheme as a "true immunity." The district court concluded self-defense immunity should be available regardless of the charged offense's mens rea element. Otherwise, the court continued, "it . . . put[s] the cart before the horse." The court

reasoned, "The immunity statute would be meaningless if the State could avoid the statute by claiming that justifiable use of force to defend one's self is nonetheless criminally reckless based upon the circumstances of such use of force or the environment in which the force was exercised." It held the statute grants immunity from criminal prosecution whether the State charges intentional, knowing, or reckless behavior.

Second, the court addressed the State's argument that a reasonable person in Betts' circumstances would not believe firing a handgun in the living room with children nearby was justified self-defense, by ruling:

"[T]here is no conflict in the evidence in this case. *Neither party disputes that Officer Betts was, in fact, defending himself. The 'dispute' in this case is whether Officer Betts should have fired his weapon in defense of himself under the circumstances not whether he was or was not justified in defending himself.* Arguably, if the shots had met their mark, Officer Betts would not have been charged with a crime.

. . . .

"[T]he court first concludes that Officer Betts was lawfully present in the home and had no duty to retreat under the law. Officer Betts was not the aggressor as contemplated by K.S.A. 21-5226.

. . . .

"The evidence establishes and neither party disputes that Betts reasonably believed that the use of force was necessary to defend himself from the dog's attack. *The court finds that a reasonable person and/or a reasonable law enforcement officer would have believed that the use of force in self-defense was necessary under the circumstances.*

. . . .

7

". . . The decision in this case is based solely upon the facts and circumstances of the case and applies only to this case. The decision does not preclude prosecution of a law enforcement officer for a reckless aggravated battery under different circumstances. The court can contemplate factual situations where the State could meet its burden to demonstrate probable cause that use of force by an officer was not justified. This is simply not one of those cases because the dispute in this case is not whether Betts was defending himself. *The State is alleging that Betts should not have done so under the circumstances. An argument can be made that Officer Betts could have and/or should have allowed the dog to attack him and suffer possible injury to his person. The argument regarding whether Betts should have used force to defend himself under the circumstances is a philosophical argument subject to varied opinions. The analysis the court conducts is confined to the parameters of the statute and neither party disputes and the evidence establishes that Betts was justified in the use of force in defending himself.* The statute grants immunity from criminal prosecution. No exception exists for the criminal prosecution of alleged reckless behavior.

"The injuries to the little girl as a result of the actions of Officer Betts were certainly unfortunate and regrettable. However, *the court finds that the State has failed to meet its burden to demonstrate that the defendant's use of force was not justified.*" (Emphases added.)

Finally, the court repeated its earlier rejection of the State's human-vs.-animal distinction, by noting in its written order:

"[A]lthough [K.S.A.] 21-5222 would certainly suggest that a claim of self-defense can only be asserted against another person's unlawful force and an animal cannot act unlawfully. [K.S.A.] 21-5221(a)(1), however, defines 'use of force' as the application of physical force, including by a weapon directed at or upon another person or *thing*. The legislature included the word *thing* i[n] the statute and the court concluded that an animal, in this case a dog, was a thing as contemplated by the statute.

8

"A person's use of force to defend against an animal attack is normally not controversial and rarely, if ever, is alleged to rise to the level of criminal behavior. The unique circumstances of this case required the court to consider the question of whether a claim of self-defense can be asserted against an animal and the court answered in the affirmative based upon the definition of use of force."

Neither party appealed this third ruling, so we treat it here as settled. See *State v. Dale*, 312 Kan. 174, 182, 474 P.3d 291 (2020) ("A party generally abandons or waives an issue by not briefing or arguing it to the court."). For the other rulings, the State appealed. See K.S.A. 2021 Supp. 22-3602(b)(1) (State may appeal dismissal of complaint, information, or indictment).

A Court of Appeals panel affirmed. It held the district court correctly allowed Betts to assert immunity because the statute "permits a district court to consider a defendant's claims of self-defense regardless of whether the State has charged conduct that is intentional, knowing, or reckless." *Betts*, 60 Kan. App. 2d at 282. It then held the court correctly found a reasonable person in Betts' position would have perceived deadly force to be necessary to protect against the approaching dog. 60 Kan. App. 2d at 282.

We granted the State's petition for review. Parenthetically, we note Betts did not cross-petition for review of the panel's decision on a preservation claim he raised on appeal, so that is resolved in the State's favor. See *State v. McBride*, 307 Kan. 60, 62, 405 P.3d 1196 (2017) (effect of failing to cross-petition for review). Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decision); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

9

We have consistently viewed the pretrial grant of statutory immunity under K.S.A. 2021 Supp. 21-5231(a) as a discrete analytical exercise from that required when a defendant asserts self-defense as an affirmative defense at trial. *Hardy*, 305 Kan. at 1009-10 ("Self-defense and immunity are clearly distinct concepts."). Here, the State argues statutory immunity is unavailable because it charged Betts with a reckless conduct crime. This presents an issue of statutory interpretation over which a court exercises unlimited review. 305 Kan. at 1008.

> "'To the extent we are called upon to interpret the statute, we first attempt to give effect to the intent of the legislature as expressed through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to express language, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. Stated yet another way, a clear and unambiguous statute must be given effect as written. If a statute is clear and unambiguous, then there is no need to resort to statutory construction or employ any of the canons that support such construction.'" *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019).

To argue its point, the State focuses on the mens rea for the charged offense. But in our view, it is more meaningful that the crime charged here alleges unintended injury to an innocent bystander. To explain this, we start with the State's argument that self-defense immunity cannot prevent prosecution for reckless crimes because self-defense is available only in cases alleging intentional crimes.

The State relies on *State v. Bradford*, 27 Kan. App. 2d 597, 3 P.3d 104 (2000), *superseded by statute on other grounds as stated in State v. Cordray*, 277 Kan. 43, 82

P.3d 503 (2004). In that case, the defendant struck a hammer-wielding woman with his car during an argument and was convicted of reckless aggravated battery. The panel reversed the conviction because of a failure to instruct on lesser included offenses. But the panel went on to consider another claimed error concerning the district court's rejection of a requested self-defense jury instruction for that same reckless aggravated battery charge in the context of self-defense claimed as an affirmative defense. The panel said the district court was correct not to instruct on self-defense because "[s]elf-defense is the intentional use of reasonable force to fend off an attacker. The concept of recklessness does not fit within the definition of self-defense." 27 Kan. App. 2d at 601; see also *State v. Edwards*, No. 118,626, 2019 WL 1575717 (Kan. App. 2019) (unpublished opinion) (holding a self-defense instruction factually inappropriate because there was insufficient evidence to support self-defense, and legally inappropriate because self-defense does not apply to reckless aggravated battery, relying on *Bradford*).

But the State's embrace of *Bradford* to argue a distinction based on mens rea alone is misplaced. K.S.A. 2021 Supp. 21-5231(a)'s text tells us that a person who uses justifiable force under K.S.A. 2021 Supp. 21-5222 "is immune from criminal prosecution," which "includes arrest, detention in custody and *charging* or prosecution." (Emphasis added.) This extension of immunity for even "charging" a defendant suggests the mens rea element of any potential crime would not impact an immunity analysis. And while K.S.A. 2021 Supp. 21-5222 deems the use of force justified when the defender "reasonably believes" it is "necessary," neither the statute nor our traditional two-part test for applying it includes the charged offense's mens rea in its analysis. See *Collins*, 311 Kan. at 427-28. Based on this, we conclude the charged offense's mens rea does not resolve the statutory immunity question presented here.

We turn next to the circumstances underlying the crime charged, which in this instance involves unintended injury to an innocent bystander who the defendant did not

perceive to be an attacker. Placing our focus on the facts alleged sharpens the analysis and allows contrast with the prior caselaw.

As mentioned, in the usual deadly-force self-defense immunity case, the alleged victim and aggressor are the same person. In such a case, a "district court must consider the totality of the circumstances, weigh the evidence before it without deference to the State, and decide whether the State has carried its burden to show probable cause that defendant's use of force was not statutorily justified." *State v. Phillips*, 312 Kan. 643, Syl. ¶ 1, 479 P.3d 176 (2021). The State meets its burden by showing defendant's use of deadly force was not justified because either (1) the defendant did not honestly believe the use of deadly force was necessary against the aggressor to prevent imminent death or great bodily harm to the defendant or a third person, or (2) a reasonable person in the same circumstances would not have perceived the use of lethal force against the aggressor necessary to protect the defendant or a third person. 312 Kan. at 662-63. This test derives from K.S.A. 2021 Supp. 21-5222. The first prong is a subjective inquiry, while the second is an objective one. *Collins*, 311 Kan. at 427. This two-part test has not previously required a person acting in self-defense to consider their surroundings before unleashing lethal force against their attacker.

But if the alleged victim and alleged aggressor are different people, this test falls short because it would resolve the immunity question by considering only whether the defendant's otherwise criminal act was justified against the attacker without regard to the alleged reckless injury inflicted on the victim. Our statutory scheme requires a different analytical path to address the crime charged.

Looking first at K.S.A. 2021 Supp. 21-5221(a), we see "[u]se of deadly force" is broadly defined. It includes "any or all of the following directed at or upon another person or thing: . . . the application of physical force, including by a weapon or through

the actions of another" "which is likely to cause death or great bodily harm to a person." But K.S.A. 2021 Supp. 21-5231(a), which references K.S.A. 2021 Supp. 21-5222, has more narrowly defined the conditions for when a defendant is immunized for the use of justified force. The latter statute provides only that a person is "justified in the use of force *against another . . .* to defend *. . . against such other's* imminent use of unlawful force." In other words, the justification is for the force directed at an attacker. The statutes do not speak to force that results in accidental injuries to third parties. And this means different circumstances may bring about dissimilar outcomes for a defendant whose self-defense injures an innocent person.

Consider some possibilities for illustration. For instance, the defendant might intentionally shoot a bystander under the mistaken belief the bystander is an aggressor. E.g., *Carbo, Inc. v. Lowe*, 521 N.E.2d 977 (Ind. Ct. App. 1988) (holding liquor store clerk entitled to believe he was being attacked during a robbery attempt when unmasked innocent bystander, who entered store with masked armed robbers, vaulted over the store counter after robbers began firing; the clerk's fatal shooting of bystander was justifiable self-defense). This scenario seemingly could fall within our standard test for immunity because it requires only that the defendant "reasonably believe[]" the person against whom force is used is about to use unlawful force against the defendant or a third person. K.S.A. 2021 Supp. 21-5222. We are not deciding this today, however, because those facts are not presented.

Another possibility would be if the defendant accidentally injures the bystander during an otherwise justified act of self-defense. If the State charges an intentional crime for this, the defendant would presumably argue he harbored no criminal intent toward the bystander. See *People v. Morris*, 109 A.D.2d 413, 416, 491 N.Y.S.2d 860 (1985) (if defendant would have been justified in shooting the intended victim, defendant is no less justified in accidentally shooting an innocent bystander when charged with intentional

13

crime, but under certain circumstances, defendant may be convicted of lesser included offense if jury concludes injury to bystander caused by defendant's reckless or negligent conduct). Again, we are not deciding this scenario here because the State did not charge Betts with an intentional crime.

So what if the State alleges a reckless crime involving injury to a bystander, i.e., the State asserts the defendant consciously disregarded a substantial and unjustifiable risk of injury to the bystander while exercising the self-defense privilege against a perceived attacker? Only two Court of Appeals decisions have minimally touched on a similar fact-pattern, but neither help. *In re C.J.*, No. 72,845, 1995 WL 18253426, at *1 (Kan. App. 1995) (unpublished opinion), rejected a claim defendant was not guilty of battery when defendant unintentionally hit a teacher who was trying to break up a school brawl when evidence showed self-defense no longer necessary against the initial aggressor. The panel did not reach the innocent bystander question because it held the facts failed to justify self-defense regardless. The only other discussion came more generally in *State v. Bellinger*, 47 Kan. App. 2d 776, 278 P.3d 975 (2012), in which the dissent listed some out-of-state cases and superficially concluded: "If a defendant legitimately acts in self-defense, he or she is commonly not criminally responsible for harm to third parties." 47 Kan. App. 2d at 800 (Atcheson, J., dissenting).

In our view, the crime charged can shift the focus. And the State here claims a reckless crime occurred when Betts fired his handgun twice at the dog while the girl sat nearby. See K.S.A. 2021 Supp. 21-5413(b)(2)(B) ("Aggravated battery is . . . recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."); K.S.A. 2021 Supp. 21-5202(j) ("A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will

14

follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.").

As noted, K.S.A. 2021 Supp. 21-5222 provides only that a person is "justified in the use of force *against another . . . to defend . . . against such other's imminent use of unlawful force*." (Emphasis added.) This means statutory immunity attaches to the use of force against the person or thing reasonably believed to be an aggressor—not an innocent bystander such as the young girl here. So when a defendant asserts self-defense immunity in a case involving reckless injury to an innocent bystander, who the defendant did not perceive to be an attacker, immunity does not apply. Said more plainly, the reckless use of force against innocent bystanders lies outside the immunity statute's stated scope, so the prosecution can proceed if the State can demonstrate probable cause exists that the defendant recklessly harmed the bystander as defined by the criminal statutes. See K.S.A. 2021 Supp. 22-2902(3) (probable cause finding at preliminary examination).

This result is in line with most states that have addressed the innocent bystander issue by either statute or caselaw. In states with statutes providing a self-defense privilege extending to unintended harm to an innocent bystander, they do so expressly and do not allow it unconditionally. And while the specific text differs, all declare a self-defense claim available when the defendant acted with usual and ordinary caution and without an unlawful intention or is unavailable when the defendant acted either recklessly or negligently. See, e.g., Ala. Code § 13A-3-21(b) ("If a person is justified or excused in using force against a person, but he recklessly or negligently injures or creates a substantial injury to another person, the justifications afforded by this article are unavailable in a prosecution for such recklessness or negligence."); Ariz. Rev. Stat. Ann. § 13-401(A) (self-defense justification "unavailable in a prosecution for the reckless injury or killing of the innocent third person"); Ark. Code Ann. § 5-2-614(b) (self-defense justification "unavailable in a prosecution for the recklessness or negligence

15

toward the third party"); Del. Code Ann. tit. 11 § 470(b) (self-defense justification "unavailable in a prosecution for an offense involving recklessness or negligence towards innocent persons"); Haw. Rev. Stat. Ann. § 703-310(2) (self-defense justification unavailable "for such recklessness or negligence toward innocent persons"); Idaho Code Ann. § 18-4012 ("Homicide is excusable . . . [w]hen committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent."); Ky. Rev. Stat. Ann. § 503.120(2) (self-defense justification "unavailable in a prosecution for an offense involving wantonness or recklessness toward innocent persons"); Me. Rev. Stat. tit. 17-A § 101(3) (self-defense justification "is unavailable in a prosecution for such recklessness"); Miss. Code. Ann. § 97-3-17(a) ("The killing of any human . . . shall be excusable . . . [w]hen committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent."); *Rogers v. State*, 994 So. 2d 792, 802 (Miss. Ct. App. 2008) (applying Miss. Code. Ann. § 97-3-17 in innocent bystander case); Mo. Ann. Stat. § 563.070 ("Conduct which would otherwise constitute an offense . . . is excusable and not criminal when it is the result of accident in any lawful act by lawful means without knowingly causing or attempting to cause physical injury and without acting with criminal negligence."); Neb. Rev. Stat. Ann. § 28-1414(3) (self-defense justification "unavailable in a prosecution for such recklessness or negligence towards innocent persons"); N.J. Stat. Ann. § 2C:3-9 (self-defense justification "unavailable in a prosecution for such recklessness or negligence towards innocent persons"); N.M. Stat. Ann. § 30-2-5(A) ("Homicide is excusable . . . when committed by accident or misfortune in doing any lawful act, by lawful means, with usual and ordinary caution and without any unlawful intent."); N.D. Cent. Code Ann. § 12.1-05-01 (self-defense justification "unavailable in a prosecution for such recklessness or negligence"); Okla. Stat. Ann. tit. 21, § 731 ("Homicide is excusable . . . [w]hen committed by accident and misfortune in doing any lawful act, by lawful means, with usual and ordinary caution, and without any unlawful intent."); S.D. Codified Laws § 22-16-30 ("Homicide is

16

excusable if committed by accident and misfortune in doing any lawful act, with usual and ordinary caution."); Tenn. Code Ann. § 39-11-604 (self-defense justification "unavailable in a prosecution for harm to an innocent third person who is recklessly injured or recklessly killed by the use of such force"); Tex. Penal Code Ann. § 9.05 (self-defense justification "unavailable in a prosecution for the reckless injury or killing of the innocent third person"); Wash. Rev. Code Ann. § 9A.16.030 ("Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, without criminal negligence, or without any unlawful intent."); Wis. Stat. Ann. § 939.48(3) ("The privilege of self-defense extends not only to the intentional infliction of harm upon a real or apparent wrongdoer, but also to the unintended infliction of harm upon a 3rd person, except that if the unintended infliction of harm amounts to the crime of first-degree or 2nd-degree reckless homicide, homicide by negligent handling of dangerous weapon, explosives or fire, first-degree or 2nd-degree reckless injury or injury by negligent handling of dangerous weapon, explosives or fire, the actor is liable for whichever one of those crimes is committed.").

In 15 states and the District of Columbia, there are no explicit statutes on the subject and no caselaw. But in those states where there is caselaw, 13 allow a self-defense privilege to extend to unintended harm to a bystander but have held or at least suggested reckless crimes are excluded—California, Colorado, Florida, Georgia, Illinois, Maryland, Michigan, Minnesota, New York, North Carolina, Ohio, Utah, and Wyoming. See, e.g., *People v. Mathews*, 91 Cal. App. 3d 1018, 1024, 154 Cal. Rptr. 628 (Ct. App. 1979) (privilege extended to voluntary manslaughter, an intentional crime but without malice); *Henwood v. People*, 54 Colo. 188, 192, 194, 129 P. 1010 (1913) (defendant challenged the second-degree murder conviction; noting "[i]f the facts justified him in so doing, his action in this respect would be lawful, but, if he did so without due caution or circumspection, taking into consideration the presence of others in the barroom, he was not guiltless, but might be adjudged guilty of involuntary manslaughter in causing the

17

death of Copeland"); *Nelson v. State*, 853 So. 2d 563, 565 (Fla. Dist. Ct. App. 2003) ("[A]ppellant should have been entitled to transfer his theory of self-defense to defend against the transferred intent crime."); *Howard v. State*, 307 Ga. 12, 23, 834 S.E.2d 11 (2019) (noting the principle of transferred justification does not apply when the accused shot carelessly and in reckless and wanton disregard of the danger resulting to bystander); *People v. Getter*, 26 N.E.3d 391 (Ill. App. Ct. 2015) (extending privilege to aggravated discharge of a firearm against the innocent bystander, which required a defendant acted knowingly); *Ruffin v. State*, 10 Md. App. 102, 268 A.2d 494 (1970) (self-defense justification available to intentional crimes; holding it was inapplicable to a reckless crime); *People v. Jackson*, 390 Mich. 621, 624, 212 N.W.2d 918 (1973) ("The unintended killing of an innocent bystander is not murder if justifiably committed in proper self-defense. It may, however, be manslaughter."); *People v. Morris*, 109 A.D.2d 413, 415-17, 491 N.Y.S.2d 860 (1985) (holding where defendant would have been justified in shooting intended victim, defendant is no less justified in shooting innocent bystander accidentally; however, under certain circumstances, defendant may be convicted of lesser included offense if jury concludes that injury to bystander was caused by defendant's reckless or negligent conduct); *State v. Mitchell*, 251 N.C. App. 370, 794 S.E.2d 922 (2016) (holding the privilege could have been available to an assault-with-a-deadly-weapon-inflicting serious-injury crime, unclear from the opinion, but this crime is either intentionally or knowingly done; holding no evidence supported self-defense, so that privilege had no bearing on the instant case); *State v. Clifton*, 32 Ohio App. 2d 284, 286, 290 N.E.2d 921 (Ohio Ct. App. 1972) (extending privilege to the crime of knowingly causing the death of third party); *State v. Castillo*, 23 Utah 2d 70, 72, 457 P.2d 618 (1969) (recognizing "the general principle that if a person acting in necessary self-defense unintentionally injures a third person, he is not guilty of assault and battery"); *Holloman v. State*, 51 P.3d 214, 221 (Wyo. 2002) ("The general rule is that if a person acting in necessary self-defense unintentionally injures or kills a third person, he is not guilty of homicide or assault and battery. . . . The rule is not absolute and may not apply

18

if the defendant acted recklessly or negligently."); *State v. Griffis*, No. A14-1921, 2015 WL 4994451, at *4 (Minn. Ct. App. 2015) (unpublished opinion) (extending privilege to intentional crime but unavailable when defendant is "criminally liable for reckless or negligent conduct that injures a third party").

Pennsylvania is an outlier but instructive for illustrating the public policy issues that would have to be decided to judicially extend self-defense immunity here beyond our statute's explicit terms. See *Com. v. Fowlin*, 551 Pa. 414, 710 A.2d 1130 (1998) (extending privilege to reckless acts even when innocent bystander harmed). Sobering too are the facts. In *Fowlin*, the defendant drew his gun in a crowded nightclub in self-defense. He randomly fired 7-11 shots into the crowd after being blinded by pepper spray in the initial attack. He killed an assailant and wounded another attacker, but he also shot an innocent bystander. A court majority held the defendant could not be criminally liable for reckless endangerment or aggravated assault for shooting the bystander. 551 Pa. at 421-22. In disagreeing, the dissenters commented:

> "The holding of the majority effectively allows an actor to respond *in any manner and with whatever amount of force he chooses no matter who he injures*, so long as he is justified in acting in self-defense. This is a dangerous precedent. . . . [S]uch blanket authority for the use of self-defense defies logic, especially in contemporary society where possession of lethal weapons and confrontations involving them have become all too commonplace. *Under the majority's reasoning, one would be justified and could not be found criminally liable for detonating a hand-grenade in a crowded shopping mall in order to defend himself against an attacker*." (Emphases added.) 551 Pa. at 426 (Castille, J., concurring and dissenting).

The *Fowlin* dissent underscores the policy questions in play when deciding whether, or to what extent, immunity should shield defenders from criminal and civil liability for reckless harm to innocent bystanders. And since Kansas statutes have not

19

addressed those choices, our duty without such direction or statutory ambiguity is not to make public policy. See, e.g., *State v. Rozell*, 315 Kan. 295, 304, 508 P.3d 358 (2022) (courts do not add words to statutes when interpreting them "except in limited situations after finding a statutory ambiguity"). We observe no ambiguity in the statute as drafted, and the parties have not identified any. If the Legislature wishes to extend self-defense immunity when an innocent bystander is hurt, it can do so.

In the meantime, we find nothing in the statutes providing a blanket shield for reckless conduct injuring an innocent bystander who was not reasonably perceived as an attacker. So once the State meets its burden to come forward with probable cause to show the use of deadly force was done recklessly as alleged here, the case should proceed. See K.S.A. 2021 Supp. 22-2902(3) (upon preliminary examination, "[i]f from the evidence it appears that a felony has been committed and there is probable cause to believe that a felony has been committed by the defendant, the magistrate shall order the defendant bound over to the district judge having jurisdiction to try the case"); see also K.S.A. 2021 Supp. 21-5413(g)(2)(D) (reckless aggravated battery is a severity level 8, person felony).

The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed, and the case is remanded to the district court for further proceedings.