NOT DESIGNATED FOR PUBLICATION

No. 128,364

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

SHOBE DAVID SMITH,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Submitted without oral argument. Opinion filed August 29, 2025. Reversed and remanded.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Peter R. Glasser*, of Law Office of Peter R. Glasser, of Overland Park, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

PER CURIAM: The State charged Shobe David Smith with one count each of driving under the influence of alcohol and transporting an open container. The district court granted Smith's motion to suppress evidence on the basis that the Olathe city officer who detained Smith lacked authority to make a traffic stop outside the city limits. We accepted the State's interlocutory appeal. Because we find that the Olathe officer was authorized to act on a request for assistance from the county sheriff's office, we reverse the district court's order suppressing the evidence and remand for further proceedings.

1

On an evening in February 2022, Officer Jameson Miller of the Olathe Police Department responded to a 911 call involving a light-colored truck that the caller—Cindy Tincher—had seen failing to maintain its lane and driving into oncoming traffic. These incidents initially were reported to have occurred within the Olathe city limits, but then later crossed over outside the city limits into the unincorporated area of Johnson County. After Officer Miller contacted the driver—who identified himself as Smith—in the driveway of Smith's house in the county, the investigation was handed over to Johnson County Sheriff's Deputy Mark Davis. Based on the observations of Smith's demeanor and because Smith admitted drinking alcohol and driving, Deputy Davis arrested Smith for driving under the influence of alcohol. During a search of Smith's truck, Deputy Davis also located several open containers of alcohol.

The State ultimately charged Smith with one count each of driving under the influence of alcohol in violation of K.S.A. 8-1567 and transporting an open container in violation of K.S.A. 8-1599. Officer Miller, Deputy Davis, and Tincher all testified at the preliminary hearing, after which the district court found there was enough evidence to bind Smith over on the charges.

Smith later moved to suppress the evidence obtained following Officer Miller's initial detention, arguing he lacked the authority to exercise his police powers in the county jurisdiction under the version of K.S.A. 22-2401a(2) in effect at the time. The State responded, contending Officer Miller's actions were authorized under the statute either because Deputy Davis made a valid request for assistance or because Officer Miller was in fresh pursuit when he detained Smith.

The district court held an evidentiary hearing on Smith's suppression motion. The State presented evidence that on the evening in question, several callers reported seeing a

light-colored truck traveling westbound on Dennis Avenue near Alta Lane, within the Olathe city limits. Dennis Avenue eventually becomes 143rd Street west of Cedar Niles Road, which also serves as the western boundary of the Olathe city limits. Officer Miller responded to these calls but did not see the truck at the location provided, so he "cleared the call" and further advised the dispatcher to pass the information along to the Johnson County Sheriff's Office.

Deputy Davis testified that he was in De Soto when he learned about "a call . . . that originally started in Olathe's jurisdiction" involving a wrong-way driver traveling westbound "on 143rd near the area of Lone Elm." As the truck crossed over into the county, "dispatch let us know that was happening," so he "let dispatch know how far away I was, that there was no way I was going to make up that much ground and get there in time." Thus, Deputy Davis "requested Olathe because they have officers in that area to look in the area for that car."

Just a few minutes after Officer Miller disengaged from the previous calls, Tincher called 911—her second such call of the evening—to report the truck had turned around and was now travelling eastbound on 143rd Street approaching the intersection at Moonlight Road. Tincher remained on the call as she continued following the truck, describing additional traffic infractions as they proceeded along 143rd Street past Moonlight Road.

Deputy James Haney of the Johnson County Sheriff's Office was working as a call taker that night and received Tincher's call. Haney testified that his role as a call taker was to be "responsible for answering incoming calls and providing relief for breaks to the other two [roles], being information or dispatcher," while the dispatcher "is assigned to a city or area and they're responsible for dispatching or sending patrol cars to events." After receiving a call, the call taker "create[s] a call for service which goes into a panning tab.

3

And then the dispatcher will assign that to a car or unit, however you want to classify them." According to Haney, the dispatcher working that night was a "Deputy Miller."

Haney said Tincher's description of the truck's location was significant because it meant "they're going back toward the City of Olathe." Haney said Moonlight Road is about "a mile and a half or two miles" from Olathe city limits. At one point on the call, Haney said he told Tincher to "hold on" because he "needed to let the dispatcher know that they needed to re-open or redispatch Olathe Police to the area in case it came back within their city." Eventually, the truck turned right onto Greentree Lane—which Haney testified was "about a quarter of a mile" from Olathe city limits—and parked in a driveway. The address of the home was an Olathe mailing address, despite being just outside of city limits in the unincorporated part of the county.

Officer Miller was dispatched to respond to Tincher's call. Miller testified that he exited the city "due to the fact that the initial complaint was in the City of Olathe and that dispatch requested I respond to that area to check for that vehicle a second time." While nobody specifically "verbalized over the radio" that he needed to cross into the county, Miller assumed he needed to do so because "[t]hey called me to help."

After arriving at the house around 7 p.m., Officer Miller began questioning the driver and identified him as Smith. Early in the encounter and several times later, Smith asked Miller why an Olathe police officer was in the county jurisdiction. Miller explained that someone from the sheriff's office was on the way. Deputy Davis ultimately arrived about ten minutes after Officer Miller first contacted Smith and began questioning Smith. In response to another question from Smith about Olathe police being in the county, Deputy Davis explained that he was "in DeSoto" and the Olathe officers were helping because he "asked for their help."

4

Based on his observations of Smith during questioning—difficulty maintaining balance, bloodshot and watery eyes, odor of alcohol, being argumentative, difficulty understanding questions, and slurring words—Deputy Davis believed Smith was impaired. Smith also admitted driving but refused to submit to field sobriety testing. Deputy Davis arrested Smith for driving under the influence and later discovered an open box containing cans of beer behind the driver's seat, along with open and unopened containers of alcohol in the car.

Based on the evidence presented, the district court granted Smith's motion and suppressed the evidence obtained after Officer Miller detained Smith. In particular, the court found that the "request for assistance . . . by the county, once the city officer had disengaged and had come back into the city, is not authorized under [the applicable] version of the statute." In response to a clarifying question by the State asking:  "Is the court finding that there was no request for assistance made?" the court explained:  "No, I think there was a request for assistance made. But that that statute doesn't authorize that going from—allowing a city officer into the unincorporated non-city, basically." The court continued, noting that the amended version of the statute "exactly covers that point" because it allowed the Johnson County Sheriff's deputies to "ask[] officers from throughout the county to assist in an unincorporated area [which] is the jurisdiction of the sheriff's department." After the hearing, the court entered an order incorporating its oral findings.

The State timely appealed.

ANALYSIS

The State argues in this interlocutory appeal filed under K.S.A. 22-3603 that the district court erred in suppressing essentially all evidence obtained in the DUI investigation. The crux of the State's argument is that the district court erroneously

interpreted K.S.A. 2021 Supp. 22-2401a(2)(b), which allows law enforcement officers employed by a city to exercise their police powers in other jurisdictions based on a "request for assistance [that] has been made by law enforcement officers from that place."

A.    *Suppressing the evidence obtained after Smith's detention substantially impaired the State's ability to prosecute the case.*

Before moving to the merits of the State's appeal, the parties discuss whether the issue raised by the State has been adequately preserved. The State is allowed to appeal from an order "suppressing evidence or suppressing a confession or admission" if the notice of appeal is filed within 14 days. K.S.A. 22-3603.There is no dispute that the State's appeal here is timely.

But as the parties note, the Kansas Supreme Court requires that the State meet an additional threshold requirement to file an interlocutory appeal from a pretrial suppression ruling by showing that the ruling "substantially impairs the state's ability to prosecute the case." *State v. Newman*, 235 Kan. 29, 35, 680 P.2d 257 (1984). Without such a showing, an appellate court lacks jurisdiction and must dismiss the appeal. 235 Kan. at 35.

The State first argues the substantial impairment rule should be abandoned because it has no basis in the plain language of K.S.A. 22-3603. Yet the State also recognizes this court is duty-bound to follow Kansas Supreme Court precedent absent some indication of a departure from its prior position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). The only contrary authority the State offers is a recent dissenting opinion in a decision by this court, which discussed the plain language of the statute and detailed the "inconsistent applications" of the substantial impairment rule following *Newman*. See *State v. Harris*, 64 Kan. App. 2d 432, 455-57, 551 P.3d 240 (2024) (Isherwood, J., dissenting), *rev. denied* 319 Kan. 835 (2024). There is, however,

6

no indication that our Supreme Court is departing from its prior interpretation of the statute, as research reveals continued adherence to the substantial impairment rule. See *State v. Myers*, 314 Kan. 360, 366, 499 P.3d 1111 (2021). Accordingly, we must follow *Newman* by applying the substantial impairment rule.

That said, Smith concedes that suppressing the evidence obtained after Officer Miller's detention of Smith substantially impaired the State's ability to prosecute its case against Smith. Put simply, all the evidence necessary to prove the charges of DUI and transporting an open container consisted of statements Smith made to Officer Miller and Deputy Davis, the officers' observation of Smith's demeanor, and the resulting vehicle search. Thus, the State lacked the most basic evidence to prove the charged crimes—including Smith's identity as the driver of the vehicle observed committing traffic violations—because of the suppression. We agree that the State's ability to prosecute the case was substantially impaired by the suppression ruling; therefore, appellate jurisdiction of the State's appeal is appropriate under K.S.A. 22-3603.

B.   *The district court erred in determining a request for assistance did not authorize Officer Miller to enter the county to detain Smith under K.S.A. 2021 Supp. 22-2401a(2)(b).*

1.  *Our standard of review is unlimited.*

When the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). Likewise, resolving the issue presented here also requires statutory interpretation, which is a question of law subject to unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). When a statute is plain and unambiguous, courts should not speculate about the legislative intent behind that clear

7

language and should refrain from reading something into the statute that is not readily found in its words. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

2.  *There was a request for assistance from the Johnson County Sheriff's Office to the City of Olathe Police Department.*

To begin, Smith seeks to challenge the district court's factual-finding that the Johnson County Sheriff's Office requested the assistance of the Olathe police. In short, Smith contends there is a "gap" in the State's evidence, referring to the absence of testimony from the dispatcher showing precisely *how* they instructed Officer Miller to respond to Tincher's 911 call. But Smith did not file a cross-appeal, so any challenge to the district court's adverse factual finding is not properly before this court. See K.S.A. 60-2103(h) (appellee must file notice of cross-appeal to obtain appellate review of adverse rulings); *State v. Novotny*, 297 Kan. 1174, 1181, 307 P.3d 1278 (2013) (failing to file a cross-appeal is a jurisdictional bar for adverse findings). Accordingly, we decline to consider whether the district court erred by finding the Johnson County Sheriff's Office made a request for assistance.

3.  *The court erred when it applied the wrong statutory subsection.*

The State's claim turns entirely on the district court's interpretation of the relevant statute, K.S.A. 2021 Supp. 22-2401a, which provides:

"(2) Law enforcement officers employed by any city may exercise their powers as law enforcement officers:
(a) Anywhere within the city limits of the city employing them and outside of such city when on property owned or under the control of such city; and
(b) in any other place when a *request for assistance has been made by law enforcement officers from that place* or when in fresh pursuit of a person." (Emphasis added.)

8

The district court concluded that Officer Miller's actions were not authorized because the applicable version of the statute did not authorize a *county* officer to make a "request for assistance" that would allow a *city* officer to leave their jurisdiction to detain someone. The court's initial explanation seemed to be that the sheriff's office could not request Officer Miller's assistance because he "had disengaged and had come back into the city." In other words, the court seemed to be relying on the second portion of K.S.A. 2021 Supp. 22-2401a(2)(b)—the city officer was not in fresh pursuit.

But when questioned by the State, the district court's explanation alluded to an entirely different section of the statute, K.S.A. 2021 Supp. 22-2401a(7). That section empowers *city* officers to exercise their powers in other *cities* in Johnson County. See K.S.A. 2021 Supp. 22-2401a(7). But as the State correctly points out, this provision is inapplicable to the issue presented here. This was a city officer exercising their power within the county, not an adjoining city, and was squarely authorized under K.S.A. 2021 Supp. 22-2401a(2)(b).

Moreover, the Kansas Supreme Court has held the statute merely requires a law enforcement officer in the "'invaded jurisdiction'" to make a request for assistance. See *In re J.O.*, 308 Kan. 603, 608, 422 P.3d 1158 (2018) (quoting *State v. Vrabel*, 301 Kan. 797, Syl. ¶ 5, 347 P.3d 201 [2015]); *State v. Robinson*, 303 Kan. 11, 123, 363 P.3d 875 (2015) ("[A] request for assistance alone satisfies the technical requirements of the statutory exception, regardless of the surrounding facts and extraneous circumstances."), *disapproved on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017). The court has also disapproved of grafting additional requirements onto the statute. See, e.g., *Robinson*, 303 Kan. at 124 (written request need not be drafted by host jurisdiction); *State v. Ross*, 247 Kan. 191, 194, 795 P.2d 937 (1990) (statute does not require an "actual need for assistance" or that the requesting jurisdiction initiate contact). These holdings establish that the statute only requires a request for assistance to be made.

Granted, in *State v. Rowe*, 18 Kan. App. 2d 572, 574, 856 P.2d 1340 (1993), this court relied on a longstanding oral agreement between the Wabaunsee County Sheriff and the Wamego Chief of Police—in which Wamego officers could assist in emergency situations near the county line until a Wabaunsee County officer arrived—to find a request for assistance had been made to satisfy the requirements of K.S.A. 22-2401a(2)(b). But in *Vrabel*, our Supreme Court held that while mere acquiescence is insufficient, it disapproved relying solely on such agreements without a specific request for assistance by the invaded jurisdiction. See *Vrabel*, 301 Kan. at 806-07 (discussing *Rowe*). Here, there was no evidence of any implied or express mutual agreements for assistance. But the lack of such an agreement was not a factor in the district court's decision.

Instead, this case rested on an individualized request for assistance. The plain language of the statute does not require a request for assistance to be directly communicated from the requesting officer to the assisting officer. It merely provides that a city officer's authority is extended to the other jurisdiction "when a request for assistance has been made" by an officer from that place. K.S.A. 2021 Supp. 22-2401a(2)(b). And as already noted, the fact that a request was made has not been challenged on appeal.

The fact that Officer Miller chose not to proceed into the county at first is significant because it shows he understood the limits of his authority and notified the sheriff's office of a crime that was now occurring within its jurisdiction. After learning about the 911 calls and knowing there were Olathe officers in the area, Deputy Davis "requested Olathe" through dispatch because he was too far away to immediately respond. Only then did Officer Miller proceed into the county to locate Smith.

10

As a result, we agree with the State and find the district court erred in concluding Officer Miller lacked the authority to detain Smith in the county. We reverse the district court's suppression ruling and remand the case for further proceedings.

Reversed and remanded.