NOT DESIGNATED FOR PUBLICATION

No. 127,610

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN LEE KRANTZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Submitted without oral argument. Opinion filed September 19, 2025. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., MALONE and PICKERING, JJ.

CLINE, J.: Justin Lee Krantz appeals the denial of his motion to suppress THC cartridges that were discovered during a search of his vehicle after a traffic stop and then used to convict him of the crimes of possession of THC with the intent to distribute and no drug tax stamp. Krantz was stopped for violation of K.S.A. 8-133(c), which requires license plates "to be clearly visible, and . . . maintained free from foreign materials and in a condition to be clearly legible." The district court denied the motion because it found the officer had reasonable and articulable suspicion of a violation of the statute which justified his decision to stop Krantz. The officer testified he could not make out all the

1

letters on Krantz' front license plate due to grime or smudges on the plate, and the court found a photograph of the plate supported the officer's contention.

Krantz appeals, claiming his plate was legible and the district court misconstrued the statute. But we find Krantz' arguments unpersuasive and therefore affirm the court's decision.

FACTUAL BACKGROUND

On November 2, 2021, Officer Nicholas Blake watched a van driven by Krantz pass him on Interstate 70. Blake noticed Krantz' van was covered in grime, which obstructed his vision of the van's front license plate, so he initiated a traffic stop.

While Krantz and Officer Blake were talking, Blake observed Krantz breathing heavy with his pulse pounding. Krantz also told the officer he "'[h]ad some'"—referring to drugs—and when Blake told Krantz he would be searching the van, Krantz responded, "'I will be honest with you, I got some.'" Based on these statements, Blake deployed his drug-certified canine to search around Krantz' van.

After the canine alerted to the odor of illegal drugs, the officer searched the van. He found two large suitcases in the back of the van which were full of THC vapor cartridges, dispensary marijuana containers in a trash bag, and marijuana in a separate backpack. There were approximately 5,000 vapor cartridges for a total of around 499,600 dosage units of THC liquid. Krantz said COVID put him in a tough spot, and he got the THC in California for about $5 apiece but he could sell them in Illinois for $50 to $60 apiece. Krantz was arrested, and the State charged him with possession of THC with intent to distribute and possession of THC with no drug tax stamp.

Following a preliminary hearing, the district court found probable cause for both charges. Afterward, Krantz moved to suppress the evidence found in his van. Krantz argued photos showed his license plates were legible, meaning that Officer Blake did not have reasonable suspicion to believe Krantz violated K.S.A. 8-133(c). Krantz further argued K.S.A. 8-133(c) was unconstitutionally vague as applied in this case because it does not guard against arbitrary and discriminatory enforcement.

At the hearing on Krantz' motion to suppress, Officer Blake explained why he pulled over Krantz. When he first saw the van, he noticed "it looked like the vehicle had registration violations," which caused him to turn around and pursue Krantz. Once Blake caught up to Krantz' vehicle and viewed his front and back license plates, he noticed the front plate had dirt or grime on it and was in "worse shape" than the back plate. At trial, the State admitted a photo of the front license plate.

Officer Blake testified that he took the photo after Krantz was arrested and while the van was at a warehouse. Blake further explained how he sped up to see the front license plate of Krantz' van on the road, but he could not "clearly make out what it said" before the stop.

On cross-examination, Krantz admitted a second photo, of the back license plate of the van. Officer Blake admitted taking this photo as well. The officer confirmed again that he "could not read the front plate because of the dirt," and once he observed the obstructed plate, he pursued the van. He explained that he believed there was a possibility that the front license plate was in such a condition that it violated the statute.

The district court ultimately denied Krantz' motion to suppress. And in doing so, it made the following factual findings:

- "Officer Blake pulled the defendant over because of what Officer Blake believed was a defective front license plate. He had a hard time reading it while driving on the interstate."

- "Officer Blake took pictures of the front and rear license plate. There are smudges on the license plate, the front license plate in one of the photos." Then "in one of [the photos] you can read the license plate based on the lighting. The other you can largely read the license plate with the exception that one of the smudges could make an O look like a U."

- "The Court doesn't doubt Officer Blake's credibility."

- "The Court believes that Officer Blake couldn't see or couldn't tell what one of those letters was on the license plate because of the smudges, when you consider where—the one smudge in particular over the letter O, because of the speed you're driving."

- "[T]he Court believes that the plate—that Officer Blake had difficulty determining what the letter was, thus difficulty reading the plate."

The district court then stated that based on the statute's wording, Krantz' plate did not comply with the law. The district court clarified how the word "every" in K.S.A. 8-133(c) meant every license plate should comply with K.S.A. 8-133(c) regardless of whether it is a front or back plate. And the statute, the district court found, "doesn't say mostly free, largely free, it says free. And the license plate at the front of the vehicle just isn't free of foreign materials and it affects the reading of one of those letters." The district court also found the statute requires a license plate to be clearly legible—not mostly legible.

4

Thus, it concluded:

> "Officer Blake had a reasonable and articulable suspicion of a violation of the statute and his stop to pursue the matter further was legal. The Court does not find that the statute is unconstitutionally vague. . . . There could be nothing on the plate and the plate must be clearly legible."

After a bench trial on stipulated facts, the district court found Krantz guilty as charged. The district court sentenced Krantz to a 146-month prison sentence, which it suspended. Krantz was placed on probation for 36 months.

Krantz timely appealed the denial of his motion to suppress.

REVIEW OF KRANTZ' APPELLATE CHALLENGE

Krantz contends the traffic stop was invalid because Officer Blake's suspicion that Krantz' plate violated K.S.A. 8-133 was unreasonable. Yet, as the State points out, the statute requires every license plate to be "clearly legible," and, due to road grime, Krantz' front plate was not "clearly legible." K.S.A. 8-133(c).

*Standard of Review and Relevant Legal Framework*

"On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo." *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). We also review the district court's interpretation of K.S.A. 8-133(c) de novo. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022).

When law enforcement restrains a person's liberty by stopping a vehicle on a public roadway, a seizure occurs within the meaning of the Fourth Amendment to the

United States Constitution and section 15 of the Kansas Constitution Bill of Rights, which protect individuals against unreasonable searches and seizures. See *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 802-03, 172 P.3d 1205 (2007). A law enforcement officer must reasonably suspect that the person being detained "is committing, has committed or is about to commit" a traffic infraction or crime to perform a traffic stop. K.S.A. 22-2402(1); *State v. Kraemer*, 52 Kan. App. 2d 686, 691-92, 371 P.3d 954 (2016); *Wonderly*, 38 Kan. App. 2d at 803. An officer's suspicion must have a specific, objective, and articulable basis for it to be reasonable. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). Courts judge the officer's conduct by considering "'common sense and ordinary human experience under the totality of the circumstances.'" *State v. Jimenez*, 308 Kan. 315, 324, 420 P.3d 464 (2018); see also *State v. Beck*, 320 Kan. 747, 752, 571 P.3d 537 (2025) ("[W]hen deciding whether an officer has reasonable suspicion that a driver has violated K.S.A. 8-133[c], courts should apply the objective standard used in other vehicle stops implicating the Fourth Amendment," meaning "that courts are to decide whether a reasonable officer would have reasonable suspicion that, under the totality of the circumstances, the license plate was not maintained in a condition to be clearly legible.").

If an officer stopped a driver without reasonable suspicion that the driver was committing a traffic infraction or crime, then the evidence discovered during that stop may be suppressed under the exclusionary rule. This rule safeguards against unconstitutional searches and seizures by suppressing illegally seized evidence as a deterrent to future violations. See *State v. Powell*, 299 Kan. 690, 694-95, 325 P.3d 1162 (2014). The State bears the burden to show that a seizure was reasonable. *Jones*, 300 Kan. at 637.

Here, Krantz does not dispute that Officer Blake had a specific and articulable basis for stopping Krantz: that is, he believed Krantz was in violation of K.S.A. 8-133.

6

Instead, Krantz claims the district court erred in finding Blake's belief that Krantz was committing a traffic infraction was objectively reasonable.

*The district court correctly interpreted and applied K.S.A. 8-133 when determining the reasonableness of the stop.*

Krantz first contends the district court applied the wrong legal framework when adjudicating the reasonableness of Officer Blake's suspicion. He alleges the court misconstrued the statute by parsing out its elements.

K.S.A. 8-133(c) states:

"Every license plate shall at all times be securely fastened to the vehicle to which it is assigned, to prevent the plate from swinging, and at a height not less than 12 inches from the ground, measuring from the bottom of such plate. The license plate shall be fastened in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible."

Krantz says the district court held the statute meant the license plate has to be "completely free from foreign materials" and interpreted K.S.A. 8-133 to prohibit any foreign material on a license plate that affected its legibility at all, regardless of whether it rendered the license plate illegible. But that is not exactly correct. Not only did the court never make this statement, but it did not parse out the statute to read "free from foreign materials" as a basis for violation independent of whether the plate was "in a condition to be clearly legible." Instead, the court found the foreign material on Krantz' plate "affects the reading of one of [the] letters" on the plate. It found the smudge on the O meant it was unclear to the officer whether that letter was an O or a U when the officer was driving on the interstate. And it specifically noted that it believed Officer Blake's testimony that he had difficulty determining what that letter was.

In addition to misconstruing the district court's ruling, Krantz also asks us to interpret the statute in such a way as to raise the bar for its violation. Krantz says we should construe K.S.A. 8-133 to mean a person violates the statute "only if foreign materials make a license plate illegible." But Krantz' interpretation would have us substitute "illegible" for "clearly legible" in the statute, which is not our prerogative to do. Instead, we must "read the statutory language as it appears, without adding or deleting words." *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017).

Alternatively, Krantz argues the district court grafted additional requirements onto the statute which render it "ripe for overly subjective, *ad hoc* enforcement" by creating questions "about when and how the statute may be violated, including who decides what is 'clearly legible' and in what circumstances does it have to be clearly legible." But Krantz admits he is not arguing the statute is unconstitutionally vague as written—he claims the district court's interpretation makes it so. And again, he has misconstrued the court's interpretation. The district court faithfully read and applied the words of the statute when it found Officer Blake's suspicion was objectively reasonable since the foreign material on the plate meant the letters were not clearly legible. We do not find the court imposed additional requirements onto the statute—its interpretation was grounded in the language of K.S.A. 8-133(c), which requires every plate to be clearly legible. Since Krantz' complaint is based on the statute's language, which he claims he is not challenging, we find it unavailing.

Furthermore, we agree with the State that K.S.A. 8-133(c) gives fair warning to those subject to it and guards against arbitrary and unreasonable enforcement. Black's Law Dictionary defines "clear" as: "(Of language) so plain that a reasonable person would have no difficulty in comprehension; capable of being understood with only a single plausible interpretation and without any hint of obscurity, doubt, or ambiguity." Black's Law Dictionary 319 (12th ed. 2024). And it defines "visible" as "[p]erceptible to the eye; discernible by sight" and "[c]lear, distinct, and conspicuous." Black's Law

8

Dictionary 1889 (12th ed. 2024). Black's Law Dictionary does not define "legible," and while our Supreme Court did not define it in *Beck*, it did imply that the term is synonymous with "easily read." 320 Kan. at 754-55. Taking these definitions into account and in the context of K.S.A. 8-133(c), we find the plain meaning of the phrase "clearly legible" means a license plate in a condition where a reasonable person can identify the letters and numbers positively and quickly and to the exclusion of other letters and numbers. This definition also recognizes what Kansas courts have consistently acknowledged about the importance of K.S.A. 8-133(c). Law enforcement officers may have any number of legitimate reasons for running a license plate check on a moving vehicle, including to determine whether the vehicle is stolen, whether it is properly registered, or whether the occupant of the vehicle may be suspected of a crime or considered dangerous. 320 Kan. at 751 (citing *State v. Hayes*, 8 Kan. App. 2d 531, 533, 660 P.2d 1387 [1983]). The inability of an officer to make out the letters and numbers on the plate positively and quickly frustrates those purposes. And when applying this definition to the district court's findings, Krantz has not persuaded us that the district court erred in construing or applying the statute.

*The district court did not err when determining Officer Blake reasonably suspected Krantz' plate violated K.S.A. 8-133.*

Krantz also challenges the district court's finding that Officer Blake's suspicion was objectively reasonable because he contends his plate was clearly legible. He relies on the photographs of the plates and contends we can independently evaluate their legibility since we are in the same position as the district court when viewing them. But we see a couple of problems with Krantz' argument.

First, Krantz again misconstrues the district court's ruling. While he admits the district court noted the front plate was not legible because "one of the smudges could make an O look like a U," he then goes on to say "it is not clear that any concerns with

9

legibility stemmed from foreign materials on the license plate; the letter 'B' and the number '8' look similar and the letter 'O' looks similar to the letter 'D' and the number '0.'" He intimates that the court found the officer's suspicion of a violation was based on the "fact that the license plate uses numbers and letters that can be easily confused." But the district court plainly related the legibility concerns here to the grime or smudge on the plate—not the font or the plate's use of similar letters and numbers.

Second, the test is not whether the court can read the tag based on a still photograph, but whether a reasonable officer would have reasonable suspicion that, under the totality of the circumstances, that the license plate was not maintained in a condition to be clearly legible. *Beck*, 320 Kan. at 752.

"A traffic stop is reasonable at its inception if the detaining officer, at the very least, reasonably suspects the driver has violated the law." *United States v. Edgerton*, 438 F.3d 1043, 1047 (10th Cir. 2006). Here, Officer Blake testified that he "could not read the front plate because of the dirt." The district court found, "Officer Blake pulled the defendant over because of what Officer Blake believed was a defective front license plate. He had a hard time reading it while driving on the interstate." The district court also said, it "doesn't doubt Officer Blake's credibility," and we cannot reweigh or assess his credibility on appeal. See *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

Third, as the State also notes, even if we disagree with Officer Blake's assessment of the plate as he and Krantz were both driving, based on our view of a still photograph of the plate, such a disagreement would not eviscerate the reasonableness of Blake's suspicion. Reasonable suspicion does not require that facts be sufficient to sustain a conviction. Instead, if an "officer reasonably believed in good faith that a traffic violation had occurred, the stop would remain valid even if the driver were to be subsequently found not guilty of the traffic violation." *State v. Marx*, 289 Kan. 657, 666-67, 215 P.3d 601 (2009). Likewise, reasonable suspicion can rest on a reasonable mistake of fact or

law. *Heien v. North Carolina*, 574 U.S. 54, 61, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). For instance, the State points to *United States v. Rosian*, 822 Fed. Appx. 964 (11th Cir. 2020) (unpublished opinion), where the Eleventh Circuit determined that officers lawfully stopped the defendant when the vehicle's license plate had mud covering the tag number even though the officers could read the tag when they approached the vehicle. The court found that, even assuming the officers wrongfully read a distance requirement into this license plate requirement, that mistake was objectively reasonable and did not invalidate the vehicle stop. 822 Fed. Appx. at 966-67. And the State adds that in *United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001), the Tenth Circuit upheld a traffic stop based on a reasonable articulable suspicion that a cracked windshield substantially obstructed the driver's view—the standard required by Kansas law— whether or not the crack actually constituted a violation of the law.

For these reasons, we find the district court's factual findings were supported by substantial competent evidence and we agree with its ultimate legal conclusion that Officer Blake had reasonable suspicion to stop Krantz. We see no error in its denial of Krantz' motion to suppress.

Affirmed.